# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JASON WOOD,

      Plaintiff,

v.
                                  Civ. No. 1:18-cv-00500-RB-LF

CITY OF FARMINGTON,
FARMINGTON POLICE DEPARTMENT,
STEVE HEBBE, *in his individual capacity*,
DAVID GRIEGO, *in his individual capacity*,
CORBAN DAVIS, *in his individual capacity*,
MATTHEW VIETH, *in his individual capacity*,
KYLE DOWDY, *in his individual capacity*,
and DENNIS RONK, *in his individual capacity*,

      Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff Jason Wood worked as an officer in the K-9 unit of the Farmington Police Department (FPD) until he resigned from his position in early 2018. On May 29, 2018, Plaintiff filed this lawsuit against FPD, the City of Farmington (the City), and several officers in his supervisory chain of command. Plaintiff alleges that Defendants subjected him to unfounded discipline and took other adverse employment actions that caused him to resign from his position. Plaintiff raises various federal and state law claims for damages based on Defendants' conduct.

On November 21, 2018, Defendants moved to dismiss Plaintiff's federal substantive due process claims on qualified immunity grounds and the majority of Plaintiff's state law claims for failure to state a claim. (Doc. 31.) Defendants also separately moved for summary judgment on Plaintiff's federal procedural due process and conspiracy claims as well as Plaintiff's state law claim for breach of an implied contract. (Doc. 32.)

Having considered the motions, the briefing, and the relevant law, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's federal procedural due process (Count I) and conspiracy claims (Count II). With regard to Plaintiff's two substantive due process claims, Plaintiff has stipulated to the dismissal of Count III, and the Court finds that Count IV is subject to dismissal for failure to state a claim. Because there are no remaining federal claims in this matter, the Court declines to exercise supplemental jurisdiction over the remainder of Plaintiff's complaint. In sum, the Court **GRANTS IN PART** Defendants' motion to dismiss (Doc. 31) and motion for summary judgment (Doc. 32). Counts I though IV of Plaintiff's complaint are hereby dismissed with prejudice and Counts V through IX are dismissed without prejudice.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants seek summary judgment on three of Plaintiff's claims: (1) procedural due process violation under 42 U.S.C § 1983 (Count I); (2) conspiracy under 42 U.S.C. § 1983 (Count II); and (3) breach of an implied contract of employment under New Mexico law (Count V). (Doc. 32.)

## I. Background[1]

Before turning to the facts concerning Plaintiff's employment with FPD, the Court sets forth the relevant provisions of the City's personnel rules and FPD's disciplinary procedures that the parties raised in their briefing.

### A. FPD's Disciplinary Procedures Policy and the City's Personnel Rules

FPD maintains a policy governing disciplinary procedures, Policy No. 126-01, that provides "guidelines for supervisors in carrying out disciplinary action" and "prescribes

---

[1] Except as otherwise noted, the following facts are undisputed. Because this is summary judgment, the Court views the facts and all reasonable inferences therefrom in the light most favorable to Plaintiff, the non-moving party. *See S.E.C. v. Thompson*, 732 F.3d 1151, 1156–57 (10th Cir. 2013) (quotation omitted).

progressive discipline with a recurring employee problem." (Doc. 37-2 at 1.) Pursuant to Policy No. 126-01, "the supervisor initiating [any disciplinary] action will make recommendations as to the appropriate discipline to be taken." (*Id*. at 2.) "Those recommendations are reviewed through the chain of command for suggestions or comments, with the [FPD] Chief of Police having final authority." (*Id*.) Policy No. 126-01 specifies that FPD's procedures and criteria for discipline, as well as those for grievances or appeals of disciplinary action, are governed by the City's Personnel Rules. (*Id*. at 1–2.)

Section 21-7-1 of the City's Personnel Rules provides that employees "may be disciplined for cause." (Doc. 37-4 at 1.) "Cause for disciplinary action includes acts involving unsatisfactory work performance by an employee or employee conduct on or off the job which would create the appearance of impropriety . . . ." (*Id*.) The City's Personnel Rules provide a non-exhaustive list of reasons for which an employee may be disciplined. (*Id*. at 1–2.)

Depending on the type and egregiousness of the conduct necessitating disciplinary action, the City's Personnel Rules authorize department heads or supervisors to take four actions: reprimand, suspension, demotion, and/or dismissal. (*Id.* §§ 21-7-3–21-7-7.) Specifically, FPD may issue a verbal or written reprimand to an employee for cause. (*Id*. § 21-7-4.) FPD may suspend a regular non-probationary employee for cause without pay for a period of up to three working days.[2] (*Id*. § 21-7-5(a).) Any employee who chooses to appeal a suspension of less than three days "to the city manager must do so within two working days of the notice of suspension." (*Id*.) Next, FPD may also "request that an employee be demoted for cause to a lower classification." (*Id*. § 21-7-6.) An employee is entitled to a pre-demotion meeting, but may waive that right in writing. (*Id*.) Lastly, FPD may "recommend that an employee be dismissed for cause." (*Id*. § 21-7-7(a).) An

---

[2] The Personnel Rules also include procedures authorizing suspensions without pay for a period of more than three days; however, these provisions are not relevant to this case. (Doc. 37-4 §§ 21-7-5(b)–(d).)

employee is entitled to a pre-termination meeting with the department head and a representative of the personnel division, but may waive that right in writing. (*Id*.) FPD shall submit findings and recommended action to the city manager, who shall review the findings and may then either dismiss the employee or take other appropriate action. (*Id*. § 21-7-7(c).)

An employee may appeal a suspension, a demotion, or a dismissal. (*Id*. §§ 21-7-9–21-7-10.) As for written reprimands, an employee may file a grievance. (*Id*. § 21-10-4.) The Personnel Rules provide specific procedures for grievances and appeals, which the Court will address as necessary in its analysis. (*Id*. §§ 21-7-10–21-7-11, 21-10-5.)

### B. Plaintiff's Employment

FPD hired Plaintiff as a police officer on March 20, 2012. (Doc. 39-B.) The events at issue in this lawsuit occurred in 2017 and early 2018. In 2017, Plaintiff was the Canine Coordinator of FPD's K-9 unit. (*See* Doc. 39-C.) According to FPD Policy No. 241-06, the Canine Coordinator is "an Officer in charge of the canine unit as designated" and "can authorize, deny, or restrict the involvement of police canine teams" in field operations. (Doc. 37-6 at 1.)

On November 7, 2017, FPD disciplined Plaintiff as a result of an Internal Affairs (IA) investigation that found Plaintiff had engaged in "unbecoming conduct." (Doc. 39-C at 1.) The November 2017 Notice of Corrective/Disciplinary Action summarized the incident for which Plaintiff was disciplined as follows:

> At the completion of a vehicle pursuit, Officer Wood was heard voicing inappropriate and demeaning comments directed at the department related to a command decision to terminate further efforts to subdue a wanted suspect. The comments were captured on his body-worn camera system. The comments were made in the presence of a fellow officer as well as members of other agencies involved in the incident.

(*Id*.) As a result of this incident, Plaintiff was removed as the Canine Coordinator of the K-9 unit.

(*Id*.) He was also issued a one-day suspension without pay, which was deferred for a period of six

months. (*Id.*) Plaintiff was required to participate in the City's Employee Assistance Program (EAP). (*Id.*) If Plaintiff participated in the EAP and there were no other disciplinary issues for six months, the notice indicated that the one-day suspension would be reduced to a letter of reprimand. (*Id.*) As a result of being removed as the Canine Coordinator, Plaintiff lost $1.60 per hour from his regular pay. (Doc. 37-1 ¶ 3.)

The November 2017 notice included a section containing Plaintiff's comments regarding the discipline imposed and the incident. (Doc. 39-C at 2.) Plaintiff stated: "I am happy to still be in the unit as far as a strictly K9 handler capacity. . . . We as a unit have taken this opportunity to turn this into a positive and I am proud of the fellow handlers. I apologize for my words during the critical incident and will continue to work hard." (*Id.*)

Approximately two months later, on January 31, 2018, FPD disciplined Plaintiff for "unsatisfactory performance" following a second Internal Affairs (IA) investigation. (Doc. 39-D at 1.) The January 2018 Notice of Corrective/Disciplinary Action indicated that the discipline was being imposed due to Plaintiff's actions during a November 29, 2017 incident in which he responded to the Rimrock Inn to help another officer requesting back-up while arresting a resistant male subject. (*Id.*) During the incident, Plaintiff deployed his police service dog. (*Id.*) The January 2018 notice stated that:

> Ofc. J. Wood's decision to remove his canine from his unit put him at a disadvantage by tying up one of his hands and limiting all other options at his disposal. He also made the decision to un-holster his service hand gun. Ofc. J. Wood's hands were both occupied when trying to give commands and deal with an uncooperative subject. The assisting officer is calm and trying to de-escalate the incident while Ofc. J. Wood is heard yelling in the background. Ofc. J. Wood arrived on scene and took control without knowing all of the events that unfolded prior to his arrival. Ofc. J. Wood would have been of more assistance if he had left his [police service dog (PSD)] in the patrol unit and went hands-on with the subject. Additionally, Ofc. J. Wood's commands to the subject to "get down" and then to the officer to "let him up," . . . were confusing. Following the incident, Ofc. J. Wood

> failed to document pertinent information in his report detailing the actions of the
> subject in an attempt to justify his use of a canine to apprehend a suspect.

(*Id.* at 1–2.) The January 2018 notice also included a section containing Plaintiff's comments regarding the discipline imposed. (*Id.* at 2.) Plaintiff stated: "Thank you for my time on this dept as a K9 handler. It was my greatest achievement. Thank you for the thoughts of taking care of PSD Cas after his retirement. Thank you for not finding Babodi in violation." (*Id.*)

Plaintiff disputes the events that transpired during the second IA investigation. Citing to portions of his verified complaint,[3] Plaintiff states that after the incident at the Rimrock Inn, Defendant Lt. Matt Veith called Plaintiff and notified him that he was being removed from his duties because of "red flags" concerning job performance. (Doc. 1 (Compl.) ¶ 42.) Plaintiff questioned Lt. Veith regarding these red flags, but Lt. Veith gave no response and subsequently initiated the second IA investigation. (*Id.* ¶¶ 43–44.)

Defendant Corban Davis was also involved in the November 2017 incident. (*Id.* ¶ 45.) According to Plaintiff, Davis failed to appropriately document the incident, but was given additional time to produce the missing documentation. (*Id.*) FPD did not discipline Davis for his failure to appropriately document the incident. (*Id.*) Plaintiff further asserts that Davis prepped other officers on what to say to investigators during the IA investigation and specifically, to cast blame on Plaintiff for the November 2017 incident. (*Id.* ¶ 46.) In so doing, Plaintiff asserts that Davis violated FPD policies and procedures. (*Id.*) Additionally, Plaintiff maintains that Davis intentionally misrepresented the contents of the videos of the incident. (*Id.* ¶ 47.)

---

[3] Generally, a verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Fed. R. Civ. P. 56, and if the allegations contained in the verified complaint are not "merely conclusory." *See Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1019 (10th Cir. 2002) (citations omitted).

Plaintiff states he notified Defendant David Griego, who was conducting the second IA investigation, that Davis and Lt. Veith had violated FPD policies and procedures in their supervisory treatment of Plaintiff. (*Id.* ¶ 48.) Griego, however, indicated to Plaintiff that he was under pressure from FPD administration to find against Plaintiff on the IA investigation. (*Id.* ¶ 50.) In addition, Defendant Dennis Ronk indicated to Plaintiff that FPD could face a potential lawsuit because Plaintiff's police service dog had bitten the suspect during the November 2017 incident and therefore, the findings of the IA investigation would be based on FPD's liability situation rather than the facts of the incident. (*Id.* ¶ 49.) Plaintiff also asserts that Ronk began to harass and berate Plaintiff over minor matters during the course of the IA investigation and eventually began to completely ignore Plaintiff in the workplace. (*Id.* ¶ 52.)

As a result of the January 2018 IA investigation, Plaintiff was removed from the K-9 unit effective February 3, 2018. (Doc. 37-5.) He received a written reprimand and was suspended from any field training duties, to include mentorship, for a period of six months. (*Id.*) Additionally, he was suspended from any form of instructorship for a period of one year. (*Id.*) Because Plaintiff had received discipline within six months of the November 2017 incident, FPD also imposed the one-day suspension without pay that had been deferred in the November 2017 notice of corrective/disciplinary action. (*Id.* at 2.)

Plaintiff lost $0.69 per hour in pay as a result of his removal from the K-9 unit. (Doc. 37-1 ¶ 4.) Additionally, his suspension from field training duties resulted in the loss of one hour of overtime pay per shift, which amounted to approximately $37.00 per shift. (*Id.* ¶ 5.) Plaintiff also lost eligibility for a $1500 bonus at the end of the year when he was cut from the mentorship program. (*Id.* ¶ 6.) Because he lost the ability to teach at the police academy, Plaintiff asserts that

he was denied the opportunity to receive a master certification that would have made him eligible for promotions within FPD. (*Id*. ¶ 7.)

It is undisputed that Plaintiff did not file a grievance or appeal any of the discipline imposed as a result of the November 2017 and January 2018 IA investigations. (Docs. 32 ¶¶ 18–19, 28–29; 37 ¶ 1.) It is also undisputed that, after his first disciplinary action in November 2017 and until he resigned in 2018, no FPD employee explicitly notified Plaintiff that he could grieve or appeal any of the disciplinary actions taken against him. (Doc. 37-1 ¶ 2.) Plaintiff asserts that, had he been advised that he could have the City review the discipline imposed, "he would have taken advantage of any process available." (*Id*.) In response, Defendants maintain that Plaintiff was aware of the City's Personnel Rules. (Doc. 39 at 3.) They point to two documents Plaintiff signed at the start of his employment: (1) an "Employment Acceptance Agreement" that Plaintiff initialed indicating he had received a copy of the City's Personnel Rules and Administrative Regulations, and (2) an "Acknowledgement Form" Plaintiff signed indicating he had received an Employee Handbook containing the City's Personnel Rules and Administrative Regulations. (Docs. 39-A; 39-B.) Plaintiff resigned from his position in early 2018. This lawsuit followed.

## II.    Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine dispute as to any material fact unless the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute "is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way[,]" and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d

1019, 1022 (10th Cir. 2013) (quotation marks and citations omitted). In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *S.E.C. v. Thompson*, 732 F.3d 1151, 1156–57 (10th Cir. 2013) (quotation omitted). Initially, the party seeking summary judgment has the burden of showing that there is no genuine dispute as to any material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the non-moving party must show that genuine issues remain for trial. *Id.*

## III. Analysis

### A. Plaintiff's Procedural Due Process Claim (Count I)

The Fourteenth Amendment prohibits any state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. "In practice, this simply means that a state can't decide to take away a party's property 'unless fair procedures are used in making that decision.'" *Chiddix Excavating, Inc. v. Colo. Springs Utils.*, 737 F. App'x 856, 858 (10th Cir. 2018) (quoting *Mitchell v. City of Moore*, 218 F.3d 1190, 1198 (10th Cir. 2000)). "To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009) (quotation marks and citation omitted).

Defendants argue that they are entitled to summary judgment on Plaintiff's procedural due process claim for three reasons. (Doc. 32 at 10–15.) First, they contend that Plaintiff has failed to demonstrate the existence of a constitutionally protected property interest. (*Id.* at 11–13.) Second, Defendants argue that Plaintiff has waived any right to challenge the adequacy of the process he

received. (*Id.* at 13–14.) Third, they argue in the alternative that the individual Defendants are entitled to qualified immunity. (*Id.* at 14–15.)

### 1. Property Interest in Continued Employment

"An individual has a property interest in a benefit for purposes of due process protection only if he has a 'legitimate claim of entitlement' to the benefit, as opposed to a mere 'abstract need or desire' or 'unilateral expectation.'" *Teigen v. Renfrow*, 511 F.3d 1072, 1078–79 (10th Cir. 2007). "Such an interest arises not from the Due Process Clause of the Constitution itself, but is created by independent sources such as a state or federal statute, a municipal charter or ordinance, or an implied or express contract." *Id.* at 1079 (quotation marks and citation omitted); *see also Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000) ("Property interests are created and their dimensions are defined by existing rules and understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."). In this case, Plaintiff must therefore establish, based on an independent source, that he possessed a property interest in his employment that due process protects. *See Coleman v. Utah State Charter Sch. Bd.*, 673 F. App'x 822, 827 (10th Cir. 2016) (stating that "[a] plaintiff must show a right to continued employment to establish a property interest in public employment that due process protects."). The Court looks to New Mexico law to determine whether such an interest exists. *See Hesse v. Town of Jackson*, 541 F.3d 1240, 1245 (10th Cir. 2008) ("In the employment context, a property interest is a legitimate expectation in continued employment. We determine whether such a property interest exists by looking at state law.") (quotation marks and citation omitted). "Under New Mexico law, a public employee has a protected property interest only if he has an express or implied right to continued employment." *Gonzales v. City of Albuquerque*, 701 F.3d 1267, 1271 (10th Cir. 2012).

New Mexico law provides that "[e]mployment without a definite term is presumed to be at will." *Trujillo v. N. Rio Arriba Elec. Coop., Inc.*, 41 P.3d 333, 341 (N.M. 2001) (citations omitted). "In an at-will employment relationship, both the employer and the employee have the right to terminate the employment relationship at any time for any reason." *Id.* (citation omitted). "The employment-at-will doctrine permits an employer to terminate an employee at will in the absence of an express contract limiting the employer's right to do so." *Weise v. Wash. Tru Sols., L.L.C.*, 192 P.3d 1244, 1253 (N.M. Ct. App. 2008) (citation omitted). New Mexico courts "have recognized two exceptions to the at-will employment rule: (1) wrongful termination under facts disclosing unlawful retaliatory discharge or (2) where the facts disclose the existence of an implied employment contract provision that limits the employer's authority to discharge." *Trujillo*, 41 P.3d at 341 (quotation marks and citation omitted). "The parties may modify the at-will presumption by a contractual agreement regarding termination . . . [or a] representation in an employee handbook or personnel policies." *Id.* (citations omitted).

In this case, Plaintiff asserts that he had a "protected property interest in continued employment established through both an implied contract of employment and the requirement of 'just cause' for disciplinary action." (Compl. ¶ 66.) In his response brief, Plaintiff repeatedly references an "implied contract" that gave rise to a property interest in continued employment. (Doc. 37 at 10.) Plaintiff, however, fails to identify the source, such as an employee handbook, that gave rise to an implied contract of employment between himself and FPD. The Court therefore is not persuaded by Plaintiff's general assertion that he had an implied contract of employment. That being said, Plaintiff does point to other sources that Defendants do not dispute placed limitations on FPD's ability to discipline Plaintiff—specifically, FPD's policy governing disciplinary procedures (Policy No. 126-01) and the City's Personnel Rules. (Docs. 37 at 10; 37-

4; 37-2.) As set forth earlier, Policy No. 126-01 specifies that FPD employs progressive discipline procedures in accordance with the City's Personnel Rules. (Doc. 37-2.) The City's Personnel Rules in turn expressly provide that regular employees may be disciplined "for cause." (Doc. 37-4.) The Personnel Rules further set forth procedural requirements that City departments must follow in imposing discipline ranging from reprimands to dismissal. (*Id.*)

Because FPD's ability to discipline and to ultimately discharge employees was limited by the "for cause" requirement in the City's Personnel Rules, the Court concludes that Plaintiff has established a property interest in continued employment. *See West v. Grand Cty.*, 967 F.2d 362, 366 (10th Cir. 1992) ("[W]hen a person's employment can be terminated only for specified reasons, his or her expectation of continued employment is sufficient to invoke the protections of the Fourteenth Amendment.") (citations omitted); *see also Kingsford v. Salt Lake City Sch. Dist.*, 247 F.3d 1123, 1129 (10th Cir. 2001) (when "there are substantive restrictions on the ability of the employer to terminate the employee[,]" a continued expectation of employment is established) (citation omitted); *City of Albuquerque v. AFSCME Council 18 ex rel. Puccini*, 249 P.3d 510, 513 (N.M. Ct. App. 2011) ("[E]mployees with a legitimate expectation of continued employment are protected from termination without just cause, notice, and opportunity to be heard.") (citation omitted); *Blan v. Correct Care Sols., LLC*, Civ. No. 17-CV-182 NF/KHR, 2017 WL 8640634, at *3 (D.N.M. Dec. 11, 2017) (finding plaintiff failed to establish a protected property interest in continued employment where she was unable to point to a statute or contractual provision limiting her employer's ability to discharge her only for cause).

In their motion for summary judgment, Defendants do not directly address whether Plaintiff had a protected property interest in continued employment based on the City's Personnel Rules. (Doc. 32 at 11–12.) Rather, Defendants argue that "not all property interests deserve

constitutional protection," and that in this case, the imposed disciplinary actions were de minimus and thus insufficient to trigger procedural due process protections. (Doc. 32 at 11–12 (*citing Dill v. City of Edmond*, 155 F.3d 1193, 1207 (10th Cir. 1998) *abrogated in part on other grounds by Currier v. Doran*, 242 F.3d 905 (10th Cir. 2001)).) Defendants, however, do not dispute that Plaintiff's removal from the unit coordinator position and ultimately, the K-9 unit, resulted in two reductions in base pay, and that Plaintiff's suspension was without pay. These disciplinary actions were sufficient to trigger due process protections. *See Bailey v. Kirk*, 777 F.2d 567, 575 (10th Cir. 1985) (holding that the plaintiff's suspensions without pay "implicated a property interest entitled to due process safeguards in light of cases which hold that temporary suspensions without pay are not de minimis and impinge on protected property interests"); *Teigen*, 511 F.3d at 1079 (finding that plaintiffs' property interest in continued employment did not trigger due process protections because the plaintiffs remained employed at the same rank and did not suffer any decrease in compensation as a result of the alleged discipline). The Court therefore rejects Defendants' argument that Plaintiff did not have a constitutionally protected property interest.

### 2. Adequacy of Process Afforded

"An essential principle of due process is that a deprivation of life, liberty or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quotation and citation omitted). Thus, "the root requirement" of the due process clause is that "an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Id.* (brackets, quotation and citation omitted). "For government employees, such a hearing requires: (1) oral or written notice to the employee of the charges against him; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to present his side of the story." *Riggins*, 572 F.3d at 1108

(brackets, quotation, and citation omitted). "A full evidentiary hearing is not required[,]" but the employee must "be given notice and an opportunity to respond." *Id.* (quotation omitted). The Tenth Circuit has stated that:

> We have upheld as sufficient to meet these requirements informal proceedings, such as pretermination warnings and an opportunity for a face-to-face meeting with supervisors, and even a limited conversation between an employee and his supervisor immediately prior to the employee's termination. The objective of the process is an initial check against mistaken decisions – essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.

*Id.* (quotation, footnote, and citations omitted). The procedures that are constitutionally required depend on the circumstances of a particular case. If only minimal procedural protections occur before the adverse employment action, due process requires post-termination procedures that provide the employee "with the opportunity to challenge [the adverse employment action] in a more detailed fashion." *Montgomery v. City of Ardmore*, 365 F.3d 926, 938 (10th Cir. 2004). Similarly, the adequacy of available post-deprivation procedures depends on the earlier process afforded. "When the [pre-deprivation] process offers little or no opportunity for the employee to present his side of the case, [post-deprivation procedures] become much more important." *Benavidez v. City of Albuquerque*, 101 F.3d 620, 626 (10th Cir. 1996).

On the summary judgment record presented in this case, the undisputed facts establish that Plaintiff received adequate process prior to being disciplined. Specifically, Plaintiff received ample notice based on the November 2017 and January 2018 notices of disciplinary action in that each provided a summary of the underlying incident, listed the department policies that Plaintiff allegedly violated, and set forth the specific discipline being imposed. (Docs. 39-C; 39-D.) Plaintiff does not deny that the notices adequately apprised him of the proposed discipline. The only challenge Plaintiff raises regarding the notices is that FPD violated Policy No. 126-01 because the

notices were not signed by FPD's chief of police. (Doc. 37 at 3–4.) This argument is without merit because the notices were in fact signed by FPD's police chief and Plaintiff's supervisory chain of command on the same date that Plaintiff signed them. (Docs. 39-A; 39-B.)

In addition to receiving adequate notice, the record also establishes that Plaintiff had the opportunity to be heard prior to being disciplined. Because Plaintiff completed the section in each disciplinary notice entitled "[e]mployee's comments and plan to correct problem," it is clear that Plaintiff met with his supervisor to discuss the underlying incidents and the proposed discipline. (*Id.*) That Plaintiff had the opportunity to present "his side of the story," *Riggins*, 572 F.3d at 1109, is further supported by Plaintiff's verified complaint, in which he acknowledges that he met with IA investigators and his supervisors to discuss the underlying incidents, his concerns regarding the IA investigations, and the proposed discipline. (Compl. ¶¶ 42–43, 48, 50, 55.) These undisputed facts, viewed in the light most favorable to Plaintiff, establish that Plaintiff received the pre-deprivation procedural protections that the Due Process Clause requires, namely, notice of the reasons for the proposed discipline, a description of alleged facts underlying each of those reasons, and an opportunity to respond and present his side of the story.

Regarding post-deprivation procedures, Plaintiff does not dispute that he failed to pursue the available post-deprivation procedures Defendants offered regarding the November 2017 and January 2018 disciplinary actions. (Docs. 32 ¶¶ 18–19, 28–29; 37 ¶ 1.) Plaintiff claims, however, that FPD did not notify him that he could grieve or appeal the disciplinary actions, and further, that had he been advised of these procedures, he would have taken advantage of them. (Doc. 37-1 ¶ 2.) Although Defendants have not disputed Plaintiff's assertion that no FPD employee notified him of the availability of post-deprivation procedures at the time he was being disciplined, Defendants do present evidence establishing that Plaintiff was provided a copy of the City's

15

Personnel Rules when he began his employment. (Docs. 39-A; 39-B.) Because the City's Personnel Rules set forth the available post-deprivation procedures, the Court finds that Plaintiff was already on notice of these procedures from the time he began his employment. Furthermore, even if no FPD employee advised Plaintiff of these procedures, the Court observes that both the November 2017 and the January 2018 disciplinary notices Plaintiff received stated that he was being disciplined in accordance with Policy No. 126-01. (Docs. 39-C; 39-D.) As discussed earlier, Policy No. 126-01 specifies that an employee can file a grievance or appeal a disciplinary action and that these procedures follow the guidelines in the City's Personnel Rules. (*Id.*) Viewing this evidence and all reasonable inferences therefrom in the light most favorable to Plaintiff, the Court concludes that Plaintiff had adequate notice of the availability of post-deprivation procedures.

By failing to take advantage of the available post-deprivation procedures, the Court agrees with Defendants that Plaintiff has waived his right to challenge them in federal court. *See Santana v. City of Tulsa*, 359 F.3d 1241, 1244 (10th Cir. 2004) ("A party cannot create a due process claim by ignoring established procedures."); *Sandoval v. City of Boulder*, 388 F.3d 1312, 1329 (10th Cir. 2004) (holding that employee waived her procedural due process claim by failing to request a hearing to contest a decision not to promote her); *Lee v. Regents of Univ. of Cal.*, 221 F. App'x 711, 714 (10th Cir. 2007) (plaintiff "waived any challenge to the fairness of [his employer's] post-termination hearing procedures because he never requested a post-termination hearing"); *Koessel v. Sublette Cty. Sheriff's Dept.*, 717 F.3d 736, 749 (10th Cir. 2013) ("Whether, in light of the pretermination process, this post-termination process is constitutionally sufficient is a question we need not reach, as Koessel waived that issue by failing to request his [post-termination] hearing with the Sheriff's Office.").

Based on the foregoing reasons, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's procedural due process claim (Count I). This claim is dismissed with prejudice.

**B. Plaintiff's Conspiracy Claim (Count II)**

In Count II of his complaint, Plaintiff asserts a conspiracy claim under 42 U.S.C. § 1983 alleging that the individual Defendants conspired to deprive him of his procedural and substantive due process constitutional rights. (Compl. ¶¶ 80–87.) Defendants argue that they are entitled to summary judgment on this claim because Plaintiff has failed to establish the existence of an underlying constitutional violation. (Doc. 31 at 15–16.) The Court agrees.

In order to succeed on a § 1983 conspiracy claim, a plaintiff "must prove both the existence of a conspiracy and the deprivation of a constitutional right." *Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995) (citation omitted). A conspiracy claim fails where the plaintiff fails to establish a constitutional violation. *Id.* (determining that conspiracy claim failed because the plaintiff failed to establish the existence of a constitutional violation, which was "an essential element of the conspiracy claim"); *see also Berry v. Oklahoma*, 495 F. App'x 920, 922 (10th Cir. 2012) ("[B]ecause Berry has not established a constitutional violation, his § 1983 conspiracy claim also fails."); *Leatherwood v. Rios*, 705 F. App'x 735, 739 (10th Cir. 2017) (determining that plaintiff could not prevail on § 1983 conspiracy claim because "he failed to establish the existence of a constitutional violation as necessary to state this claim").

As discussed in this Order, the Court has determined that Plaintiff has failed to establish the existence of an underlying constitutional due process violation. Because an essential element of the conspiracy claim is absent, Defendants are entitled to summary judgment on Plaintiff's conspiracy claim and this claim is dismissed with prejudice.

# **DEFENDANTS' MOTION TO DISMISS**[4]

## I.     Legal Standard

"[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In ruling on a motion to dismiss, the Court "accept[s] the well-pled factual allegations in the complaint as true, resolve[s] all reasonable inferences in the plaintiff's favor, and ask[s] whether it is plausible that the plaintiff is entitled to relief." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (quotation marks and citations omitted).

## II.     Analysis

Defendants contend that Plaintiff's substantive due process claims, as asserted in Counts III and IV of Plaintiff's complaint, are subject to dismissal. (Doc. 31 at 9–18.) In his response brief, Plaintiff has stipulated to the dismissal of Count III. (Doc. 36 at 2.) Count III is therefore dismissed with prejudice and the Court turns to consider the parties' arguments regarding Count IV. In Count IV, Plaintiff alleges a substantive due process claim based on a "deprivation of a protected property interest in [his] continued employment with [] FPD." (Compl. ¶ 97.) With respect to this claim, Defendants contend that Plaintiff fails to state a claim for relief and alternatively, that the individual Defendants are entitled to qualified immunity on this claim. (Doc. 31 at 16–18.)

"A Fourteenth Amendment substantive due process claim arises when a plaintiff alleges the government deprived him of a fundamental right." *Koessel*, 717 F.3d at 749 (citation omitted). "Substantive due process protects fundamental liberty interests and protects against the exercise

---

[4] The facts in this section are taken from Plaintiff's Complaint (Doc. 1), and all well-pleaded factual allegations are presented in this section as true and construed in the light most favorable to Plaintiff. *See In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015). The Court recites only the facts and procedural background necessary to resolve Defendants' motion to dismiss.

of government authority that 'shocks the conscience.'" *Id.* (quoting *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008)). The Tenth Circuit "has not determined whether public employment is a fundamental liberty interest protected by substantive due process . . . ." *Id.* (citing *Potts v. Davis Cty.*, 551 F.3d 1188, 1193 n.1 (10th Cir. 2009). Even if it were, Plaintiff does not assert in this case that Defendants deprived him of a fundamental liberty interest. Therefore, to prevail on his substantive due process claim as asserted in Count IV, Plaintiff must show that Defendants' conduct shocks the conscience.

To show that Defendants' conduct is conscience shocking, Plaintiff "must prove a government actor abused his or her authority or employ[ed] it as an instrument of oppression in a manner that shocks the conscience." *Id.* at 750 (quotation marks and citation omitted). "Substantive due process prohibits 'only the most egregious official conduct[,]'" *id.* (quoting *Seegmiller*, 527 F.3d at 767), and "[e]ven most intentionally inflicted injuries caused by misuse of government authority will not meet this standard[,]" *id.* (citations omitted). Negligent conduct does not shock the conscience, and

> plaintiff must do more than show the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. The plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking. This is a high level of outrageousness.

*Ward v. Anderson*, 494 F.3d 929, 937–38 (10th Cir. 2007) (quoting *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1222–23 (10th Cir. 2007)).

Plaintiff asserts that the allegations in his complaint regarding the IA investigations meet the conscience shocking standard. (Doc. 36 at 10.) The Court disagrees. These allegations, even if taken as true, "do not demonstrate an abuse of government authority, let alone one sufficient to shock the judicial conscience." *Koessel*, 717 F.3d at 750. Although Plaintiff claims that FPD's

conduct was an abuse of governmental authority, the Court notes that in both the November 2017 and January 2018 notices of disciplinary action, Plaintiff did not dispute the underlying facts or raise any concerns regarding either IA investigations. Indeed, in the November 2017 notice, Plaintiff went so far as to apologize for his comments during the incident, thus apparently acknowledging that the findings of the IA investigation were warranted.[5] Nor did Plaintiff appeal or file a grievance following the disciplinary actions.

As such, Plaintiff fails to show that Defendants abused their authority, much less that they did so in a manner that would shock the judicial conscience. The Court therefore dismisses Plaintiff's substantive due process claim (Count IV) with prejudice. *See id.* at 750–51 (county's conduct in terminating Koessel did not rise to the level of a substantive due process violation where "Koessel did not even request a hearing, let alone dispute the allegations in his termination notice or present any evidence [to his employer] in his own defense"); *See also Curtis v. Okla. City Pub. Sch. Bd. of Educ.*, 147 F.3d 1200, 1216 (10th Cir. 1998) (finding no substantive due process violation where school board dismissed an employee after a hearing during which the board received no evidence, did not discuss the specific grounds for the employee's termination, and did not state the reasons for its decision).

## PLAINTIFF'S STATE LAW CLAIMS

Having dismissed with prejudice Plaintiff's federal due process and conspiracy claims, there are no claims remaining in this lawsuit over which the Court has original jurisdiction.

---

[5] Although the November 2017 and January 2018 notices were not described in detail in Plaintiff's complaint, they were referred to in the complaint and attached to the parties' briefing. Therefore, the Court will consider their content. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (on a motion to dismiss, district courts may consider "documents that the complaint incorporates by reference . . . or documents attached as exhibits to the complaint" or "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity").

Plaintiff's remaining claims are all claims brought under New Mexico law. Although Defendants have moved for summary judgment or dismissal on a number of these claims in the motions before the Court,[6] the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction"); *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (stating that "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims") (citation omitted); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."). Counts V through IX of Plaintiff's complaint are therefore dismissed without prejudice to Plaintiff pursuing these claims in state court.

## CONCLUSION

**IT IS THEREFORE ORDERED THAT**:

1. Defendants' Motion to Dismiss (Doc. 31) and Motion for Summary Judgment (Doc. 32) are **GRANTED IN PART**;

2. Counts I though IV of Plaintiff's complaint are hereby dismissed with prejudice; and

---

[6] In their motion for summary judgment (Doc. 32), Defendants seek summary judgment on Plaintiff's breach of implied contract of employment claim under New Mexico law (Count V). In their motion to dismiss (Doc. 31), Defendants seek dismissal of Plaintiff's state law claims for constructive discharge (Count VI), wrongful termination (Count VII), and breach of implied covenant of good faith and fair dealing (Count IX).

3.   Counts V through IX of Plaintiff's complaint are dismissed without prejudice.

**IT IS SO ORDERED**.

ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE